IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CRAIG LAMAR ELKINS, | |
| Movant, | CIVIL ACTION NO.: 2:18-cv-10 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No.: 2:15-cr-22) |
| Respondent. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Craig Elkins ("Elkins"), who is currently housed at the Federal Correctional Institution-Low in Jesup, Georgia, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence.  Doc. 1.  The Government filed a Motion to Dismiss, and Elkins filed a Response.  Docs. 6, 8.  Elkins also filed a Motion for Documents and a Motion to Amend. Docs. 14, 16.  The Government responded to these Motions.  Docs. 15, 17.  Elkins filed a Reply to the Government's Response to his Motion to Amend.  Doc. 19.  For the reasons which follow, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Elkins' § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Elkins a Certificate of Appealability and *in forma pauperis* status on appeal.  I **DENY** Elkins' Motion for Documents and his Motion to Amend.

## BACKGROUND

Elkins was indicted and charged, along with 17 other individuals, with conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846.  United States v. Clark, 2:15-cr-8, Doc. 1.  Elkins was later charged by Information of one count of

distribution of approximately 1.5 ounces of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(1)(C).  United States v. Elkins, 2:15-cr-22 ("Crim. Case), Doc. 1.[1]  Elkins and his appointed

attorney, Nathan Williams, were able to reach a plea agreement by which Elkins agreed to plead

guilty to the single charge in the Information.  Crim. Case, Doc. 13.  In return, the Government

agreed to: not object to a three-level reduction for acceptance of responsibility, if recommended;

not file a 21 U.S.C. § 851 notice of enhancement, if applicable; consider whether Elkins'

cooperation with the Government qualifies as substantial assistance and warrants the filing of a

downward departure motion; and dismiss the charges against Elkins in Case Number 2:15-cr-8.

Id. at 2.  The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing, during

which Brunswick Police Department Officer Michael Sapp provided the factual basis for the

plea, Judge Wood accepted Elkins' plea, and Judge Wood directed the United States Probation

Office to prepare a pre-sentence investigation report ("PSR").  Crim. Case, Doc. 29.  Judge

Wood sentenced Elkins to 151 months' imprisonment, to be served consecutively to Elkins' term

of imprisonment under Glynn County Superior Court case number CR-1100442-063.  Doc. 17.

     Elkins has now filed his § 2255 Motion to challenge his sentence.  Doc. 1.  The

Government filed a Motion to Dismiss, to which Elkins responded.  Docs. 6, 8, 11.  Elkins also

filed a Motion for Documents and a Motion to Amend, and the Government responded to these

Motions.  Docs. 14, 15, 16, 17, 19.  The Court addresses the parties' assertions.

---

[1]    The Government filed an Amended Information changing the date of the charged offense from January 19, 2015, to October 19, 2014.  Crim. Case, Doc. 7.  There are no material changes to the two charging documents.

**DISCUSSION**

**I.      Whether Counsel Rendered Ineffective Assistance**

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).  This right also extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985), and on appeal, Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Id. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that

seriously deficient performance of his attorney prejudiced the defense." <u>Id.</u> at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." <u>Harrington v. Richter</u>, 562 U.S. 86, 112 (2011). "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" <u>LeCroy</u>, 739 F.3d at 1312 (quoting <u>Strickland</u>, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, [a court] need not review the other prong." <u>Duhart v. United States</u>, 556 F. App'x 897, 898 (11th Cir. 2014). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." <u>Demar v. United States</u>, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Strickland</u>, 466 U.S. at 690. "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>James v. Sec'y, Dep't of Corr.</u>, No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995)); <u>Body v. United States</u>, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. <u>Strickland</u>, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show that "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." <u>Armstead v. Scott</u>, 37 F.3d 202, 207

(5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U .S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

### A.     During Pretrial Proceedings

In his Motion, Elkins contends Mr. Williams was ineffective during the pretrial proceedings because Mr. Williams did not inform Elkins of the "relevant circumstances and likely consequences of pleading guilty," conduct an adequate and independent investigation, and did not attempt to negotiate a more favorable plea agreement on Elkins' behalf.[2] Doc. 1-1 at 13. According to Elkins, there was no reasonable communication between him and Mr. Williams and Mr. Williams was only interested in pushing Elkins to plead guilty. Id. at 14. Elkins asserts Mr. Williams did not research case law, interview witnesses, or investigate the facts. Id. at 23. Elkins also asserts Mr. Williams failed to move for a private investigator and did not conduct an independent, pretrial investigation. Id.

Elkins' allegations on these topics are wholly conclusory. Elkins fails to explain what sort of investigation should have been performed, what such an investigation would have revealed, or how additional information would have benefitted Elkins in any way. Regarding lack of communications, Elkins does not explain what topics his counsel should have addressed, but did not, or how additional or different communications would have impacted the course of proceedings in any way. Because Elkins' contentions regarding these pretrial circumstances are superficial and conclusory, the allegations do not warrant relief. Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015); Saleh v. United States, Case No. 2:16-cv-08150, 2018 WL 2670048, at *4 (N.D. Ala. June 4, 2018) (denying movant's ineffective assistance claims because

---

[2]     Some of Elkins' assertions made under the "pretrial proceedings" heading are addressed elsewhere in this Report.

he presented nothing more than conclusory assertions).  Thus, the Court should **GRANT** this portion of the Government's Motion to Dismiss and **DENY** this portion of Elkins' § 2255 Motion.

**B.      During Plea Negotiations**

Elkins contends Mr. Williams did not communicate with him effectively during the plea process.  Doc. 1-1 at 13.  Specifically, Elkins asserts Mr. Williams wanted him to plead guilty to the charge in the indictment in Case Number 2:15-cr-8, yet Elkins would not plead guilty to a conspiracy charge, as doing so would have involved him in far more serious criminal activity. Id. at 16.  Elkins maintains Mr. Williams presented him with a plea agreement on three occasions, but he did not accept a plea offer until after he was charged by Information in Case Number 2:15-cr-22.  Id. at 16–19.  According to Elkins, Mr. Williams was only interested in having him plead guilty, would not obtain discovery on Elkins' behalf, or explain the advantages and disadvantages of the plea agreement.  Id. at 13, 19–20, 28.  In addition, Elkins states he did not understand the provisions in the plea agreement about the Court using the United States Sentencing Guidelines and the Government providing "full and accurate information" for the preparation of his PSR.  Id. at 28.  Elkins avers Mr. Williams did not discuss these provisions with him and explained "relevant conduct" meant how Elkins behaved while he was incarcerated on unrelated drug charges.  Id. at 28–29.  Elkins asserts it is "clear and obvious" he did not "have a complete understanding of the relevant circumstances and the likely consequences" of entering into this plea agreement.  Id. at 29.

In response, the Government states Elkins' sworn testimony during his Rule 11 hearing before Judge Wood contradicts his claims in his § 2255 Motion.  Doc. 6 at 19–21.  The Government argues that Elkins does not specify what Mr. Williams failed to communicate to

him or how Mr. Williams's alleged failure would have caused Elkins to reject the plea agreement or would have otherwise made a difference in the criminal proceedings.  Id. at 22.  The Government also asserts the record before the Court contradicts the remaining portions of this claim.  Id. at 23.  The Government alleges Judge Wood advised Elkins he did not have to plead guilty and could go to trial, and Elkins stated during the Rule 11 hearing he and Mr. Williams discussed the plea agreement.  Id.  Additionally, the Government contends Elkins benefited from the plea agreement in four ways: (1) the Government agreed to move to dismiss the conspiracy charges against Elkins in the Clark case (2:15-cr-8), which resulted in Elkins being responsible for only 17 ounces of drugs rather than for the entirety of the drugs the conspirators distributed; (2) the Government agreed not to file a § 851 enhancement which, given Elkins' four prior felony drug convictions, would have resulted in an increase of his statutory maximum to 30 years; (3) the Government agreed not to object to a three-level reduction for acceptance of responsibility, which would have increased his sentence; and (4) Elkins could have availed himself to a downward departure by providing substantial assistance in the prosecution of others. Id. at 23–25.  Moreover, the Government states Judge Wood would have considered Elkins' relevant conduct to calculate his Guidelines range, and the Government would provide full and accurate information to help with the preparation of the PSR, regardless of whether Elkins pleaded guilty or proceeded to trial.  Id. at 25.

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the

range of competence demanded of attorneys in criminal cases." <u>United States v. Munguia-Ramirez</u>, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant." <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970); <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. <u>Cannon v. Jones</u>, Case No. 3:15CV213, 2017 WL 990583, at *6 (N.D. Fla. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (citing <u>McMann v. Richardson</u>, 397 U.S. 759, 770–71 (1970)).

In addition, a defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated that "the representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. <u>Id.</u>

When "a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." <u>Lee v. United States</u>, ___ U.S. ___, 137 S. Ct. 1958, 1965 (2017). "Instead, when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would

8

not have pleaded guilty and would have insisted on going to trial." <u>Spriggs v. United States</u>, 703 F. App'x 888, 890 (11th Cir. 2017) (internal citation and punctuation omitted).  A movant "alleging prejudice with respect to the plea process must demonstrate a reasonable probability that he would have gone to trial rather than enter the plea, but for counsel's errors." <u>Martinez v. Sec'y, Fla. Dep't of Corr.</u>, 684 F. App'x 915, 922 (11th Cir. 2017) (citing <u>Lafler v. Cooper</u>, 566 U.S. 156, 163 (2012)).  "Further, the decision to reject the plea must have been 'rational under the circumstances.'" <u>Id.</u> (quoting <u>Padilla v. Kentucky</u>, 559 U.S. 356, 372 (2010)).  In a plea situation, the focus of inquiry under the performance prong of <u>Strickland</u> is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" <u>Hill</u>, 474 U.S. at 56–57 (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970)).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Cannon</u>, 2017 WL 990583, at *10 (citing <u>Strickland</u>, 466 U.S. at 689).

Elkins and his attorney, Mr. Williams, were able to negotiate a plea agreement with the Government whereby Elkins agreed to plead guilty to one count of distribution of cocaine. Crim. Case, Doc. 13 at 1.  In return, the Government agreed to: not object the a three-level reduction recommendation for acceptance of responsibility; not to file a § 851 enhancement, if applicable; consider whether Elkins cooperated with the Government to provide substantial assistance warranting the filing of a motion for downward departure; and dismiss the charges against Elkins in Case Number 2:15-cr-8. <u>Id.</u> at 2.  Elkins faced a statutory sentence of no more than 20 years' imprisonment on the distribution charge. <u>Id.</u> at 5.  The plea agreement set forth the statutory elements and factual bases of the offense to which Elkins was pleading guilty. <u>Id.</u>

at 4–5.  Elkins agreed that he was guilty of the offense.  Id. at 4.  In addition, Elkins affirmed he had read and reviewed the agreement with his attorney, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate. Id. at 12.

Elkins appeared before Judge Wood for his Rule 11 proceeding.  Judge Wood addressed Elkins and informed him the purpose of the hearing was to ensure that he understood the case that was pending against him, he understood all of the rights he was waiving or giving up by pleading guilty, there was a factual basis for the guilty plea, and, after consultation with Mr. Williams, pleading guilty was what Elkins wanted to do.  Crim. Case, Doc. 29.  Judge Wood inquired whether anyone had made, pushed, or leaned on Elkins to offer to plead guilty, and he said no one had done so and that pleading guilty was what he wanted to do.  Id. at 3.  After being sworn in, Judge Wood told Elkins that he did not have to plead guilty.  Id. at 7.  Judge Wood also told Elkins that, if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent.  Id.  However, Judge Wood cautioned Elkins he would be waiving these rights if he pleaded guilty and she accepted that guilty plea.  Id. at 8.  Elkins stated he understood.  Id.  Elkins also stated he and Mr. Williams had had the opportunity to talk about the facts and the law pertaining to his case and the Information filed against him, as well as about the proposed plea agreement and the application of the advisory Sentencing Guidelines.  Id. at 8.  Elkins affirmed Mr. Williams had discussed in general terms what would occur at the Rule 11 hearing.  Id. at 9.  When Judge Wood asked Elkins whether he was satisfied with Mr. Williams' representation, he replied, "Yes, I am.

I'm very pleased with him." Id. Elkins also stated he had no complaints whatsoever about Mr. Williams. Id.

Judge Wood reviewed the Information with Elkins, the essential elements of the crime to which he was pleading guilty, and that the Government would have to prove those essential elements. Id. By pleading guilty, Judge Wood noted Elkins was admitting the essential elements of the crime to which he intended to plead guilty were satisfied. Id. at 10. Judge Wood advised Elkins of the maximum sentence she could impose. Id. Moreover, Judge Wood explained to Elkins that, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553. Id. at 11. In her consideration of his sentence, Judge Wood also explained some of the "major factors" she would have to take into account were Elkins' actual conduct, his criminal conduct, his criminal history, and whether he was truthful and accepted responsibility for his actions. Id.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement. AUSA Carlton Bourne stated the material provisions were:

> The Government agrees not to object to a recommendation from probation that the Defendant receive a three-level reduction for acceptance of responsibility based on the timeliness of his plea and provided he truthfully admits the conduct comprising the offense of conviction and that he has not engaged in any criminal conduct since his arrest.
>
> The Government agrees not to file a 21 USC Section 851 enhancement, if applicable. The Government agrees to consider whether any cooperation he may provide qualifies as substantial assistance and warrants the filing of a motion for downward departure.
>
> The Government agrees to dismiss the charges in Indictment 2:15-8 against this Defendant at sentencing. Defendant agrees to plead guilty to Count 1 of the information, acknowledge at the time of the plea the truth of the factual basis, [and] pay on the date of sentencing any assessments imposed by [t]he Court. If he cooperates, he agrees to provide full, complete and candid cooperation whenever called upon to do so.

> The Defendant waives his right to appeal on any ground with three exceptions and he waives his right to collaterally attack his conviction and sentence on any ground with one exception, and that's the extent of the plea agreement, Your Honor.

Id. at 13.  Judge Wood asked Elkins if AUSA Bourne's summarization of the plea agreement was consistent with the plea agreement he signed, and he stated it was.  Id. at 14.  Elkins also stated he read the plea agreement.  Id.  Elkins affirmed no one had made him any promises regarding the outcome of his case, other than the provisions contained in the plea agreement.  Id.

Judge Wood then asked Elkins whether he wished to still plead guilty to the sole count of the Information because he was in fact guilty of that count, and he answered in the affirmative. Id. at 16.  Judge Wood also asked Elkins whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did.  Id.  Judge Wood determined Elkins' offer to plead guilty was "knowing" and "voluntary."  Id. at 17.  Elkins agreed.  Id.

The Government provided a factual basis for Elkins' plea of guilty by calling Brunswick Police Department Officer Michael Sapp to testify.  Id.  Officer Sapp testified, as a member of the Federal Bureau of Investigation violent gang task force, he was one of the agents investigating the drug transactions that started on Wolfe Street in Brunswick.  Id. at 17–18.  As part of this investigation, Officer Sapp stated law enforcement had a wiretap in place for the telephone calls of Arron Clark and Christopher Young, and the wiretaps revealed Elkins was an occasional supplier of cocaine to Christopher Young, including supplying Christopher Young with an ounce and a half of cocaine after an October 19, 2014 call between the two men.  Id. at 18.

Judge Wood heard from Elkins again, during which time Elkins agreed with the Government's factual basis and admitted to the truth of Officer Sapp's testimony.  Id. at 19. Judge Wood accepted Elkins' plea and adjudged him guilty of the sole count of the Amended

Information.  Id.  Judge Wood advised Elkins that a probation officer would prepare a PSR, and the Court would schedule a sentencing hearing after the PSR was disclosed to the Government and to Mr. Williams.  Id.

 To be clear, Judge Wood informed Elkins at the outset of the Rule 11 hearing the purpose of the hearing was for him to understand the case that was pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Elkins wanted to do after consultation with his attorney.  Id. at 2–3.  After telling Elkins he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing, Elkins averred no one was forcing him to plead guilty and that pleading guilty was what he wanted to do.  Id. at 3.  Judge Wood discussed the specific rights Elkins was afforded if he chose to persist with a not guilty plea, and Judge Wood advised Elkins he would waive those rights if he pleaded guilty and she accepted his plea.  Id. at 7.  Elkins stated he had spoken with Mr. Williams about the facts and law of his case, including the plea agreement.  Id. at 8–9.  Elkins verified AUSA Bourne's summary of the plea agreement was consistent with the plea he had signed.  Id. at 14. Judge Wood asked Elkins whether he wanted to plead guilty because he was, in fact, guilty of Count 1 of the Amended Information, and he answered in the affirmative.  Elkins declared he understood the rights and privileges he was waiving by pleading guilty and proceeded to do so. Id. at 16.  Judge Wood determined Elkins' guilty plea was knowing and voluntary.  Id. at 17. Officer Sapp then provided a factual basis for Elkins' plea, and Elkins agreed with the Government's factual basis.  Id. at 19.  Judge Wood accepted Elkins' plea and adjudged him guilty of possession with intent to distribute cocaine base.  Id.  In addition, Elkins admits in his pleadings he was involved in the plea negotiations, as he rejected three plea offers before agreeing to the plea agreement at issue.  Doc. 1-1 at 15–18.

Two points Elkins makes warrant a lengthier discussion: (1) Elkins' argument regarding "relevant conduct;" and (2) his argument that Mr. Williams failed to negotiate a more favorable plea agreement.

Regarding the first point, Elkins contends he signed his plea agreement on August 7, 2015, yet an amended information containing a different date of offense was filed on August 28, 2015, "which apparently bears weight [regarding] Elkins' relevant conduct." Doc. 1-1 at 19. Elkins states Mr. Williams "deceived" him by "assuring him" his plea agreement was "nothing but a single charge" of distribution of 1.5 ounces of cocaine with no conspiracy and all other amount of drugs would be dismissed.[3] Id. Elkins notes the plea agreement set forth what the Government agreed to do in exchange for a plea agreement, yet the Court was to consider all "relevant information" relating to his background and conduct. Id. at 27 & 28. According to Elkins, this agreement skewed in the Government's favor and "did not have any benefit for [him]." Id. at 27. Elkins contends Mr. Williams did not discuss two provisions of the plea agreement—the Court's use of the Sentencing Guidelines, including U.S.S.G. § 1B1.3 concerning his relevant conduct, "not just the facts underlying the particular Court to which Defendants is pleading guilty[,]" and the provision relating to the Government's ability to provide "full and accurate information" to the Court and Probation Office. Id. at 28. Elkins avers he did not know what these provisions meant or how they would be applied, and when he asked Mr. Williams what "relevant conduct" would be considered in calculating his sentence, Mr. Williams told him it "was based upon [his] behavior on how you act towards other inmates and especially staff." Id. at 28–29.

---

[3]     As explained below, Elkins' argument stems from the fact that the specific drug transaction giving rise to Count 1 in the Amended Information involved 1.5 ounces of cocaine, but his relevant conduct for the purposes of sentencing included transactions involving approximately 17 ounces of cocaine.

At base, Elkins claims Mr. Williams advised him during plea negotiations that "relevant conduct" only meant Elkins' conduct while incarcerated.  Elkins indicates he understood this to mean he could not be held responsible for anything more than 1.5 ounces of cocaine (the amount involved in the specific transaction giving rise to Count 1 of the Amended Information).  Even assuming Elkins' allegations to be true, he fails to establish Mr. Williams rendered ineffective assistance in this regard.  Typically, erroneous sentencing calculations do not constitute ineffective assistance of counsel.  See United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993) ("Defendant has failed to show that original counsel's failure to predict the relevant conduct inclusion in his offense level constituted ineffective assistance of counsel entitling him to relief.  A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."); Lacey v. United States, No. CIV.A. 13-00413, 2015 WL 1778426, at *8 (S.D. Ala. Apr. 20, 2015) (rejecting ineffective assistance of counsel claim regarding use of relevant conduct and collecting cases on improper sentencing guidance).  At most, Elkins demonstrates Mr. Williams offered an incorrect view of Elkins exposure at sentencing, which would not constitute ineffective assistance of counsel.

More importantly, Elkins cannot show he suffered any prejudice from the purported bad advice regarding "relevant conduct."  As discussed in greater detail below, it was immaterial whether Elkins' relevant conduct included attribution of 1.5 or 17 ounces of cocaine at sentencing.  Furthermore, Elkins signed the plea agreement containing the statement regarding the Guidelines calculation would be based on relevant conduct, "not just the facts underlying the particular Count to which Defendant is pleading guilty."  Crim. Case, Doc. 13 at 6.  Elkins admitted to having read the plea agreement and having discussed the facts and law applicable to

15

the case, the proposed plea agreement, and advisory Guidelines with Mr. Williams.  Crim. Case, Doc. 29 at 8, 14.  In addition, Judge Wood told Elkins the maximum sentence she could impose on him, that she would consider the advisory Guidelines and § 3553 factors, and that she would consider the "major factors" of Elkins' actual conduct, including his criminal conduct.  Id. at 8, 11.  Therefore, even if Mr. Williams gave deficient advice about the meaning of "relevant conduct," Elkins was not prejudiced by any such statement or omission.  Indeed, Elkins does not allege—or even suggest—he would not have entered into a plea agreement and gone to trial if he had known that "relevant conduct" would result in the attribution of 17 ounces of cocaine.  See Hill, 474 U.S. at 60 (noting petitioner could not demonstrate prejudice under Strickland based on claimed erroneous advice regarding parole eligibility contained in plea agreement because petitioner did not allege he would have insisted on going to trial with correct information).

Regarding the second point, Elkins contends Mr. Williams was ineffective because—in Elkins' view—a "favorable" plea agreement would have included specific statements about application of the Guidelines, including "recommended offense levels, enhancements, if any, and recommended imprisonment range."  Id. at 29.  Elkins insists "this could have cleared all grey areas [regarding] 'relevant conduct.'"  Id.  However, as the Government correctly points out, plea agreements rarely, if ever, contain such specific statements regarding application of the Guidelines, and such statements would be difficult or impossible to adopt, given that plea negotiations typically precede preparation of any presentence investigation or report.  Doc. 6 at 26.  Thus, there is no basis for Elkins' contention that Mr. Williams was deficient in failing to negotiate a plea agreement containing specific statements about sentencing when such an agreement is far from the norm.

16

Ultimately, Elkins' assertion that Mr. Williams was ineffective during the plea phase and, had it not been for Mr. Williams's ineffective assistance, he would not have pled guilty, is belied by the record and is without merit. If Elkins had not entered a plea agreement, proceeded to trial on the charge contained in the Information, and been convicted of that count, he would have faced a Guidelines' range of 210 to 262 months' imprisonment as to this count and a statutory maximum of 20 years' imprisonment on this count.[4] Doc. 4. Because Elkins pleaded guilty, his sentencing range was 151 to 188 months' imprisonment, or a sentencing range of at least 59 months lower than what he ordinarily would have faced had he not pleaded guilty and received a three-point level reduction for acceptance of responsibility.[5] What is more, the record before the Court, including the statements Elkins rendered under oath and under penalty of perjury, contradicts Elkins' contentions in his Motion as to Mr. Williams' assistance during the plea process and whether his plea was entered into knowingly and voluntarily. Further, Elkins has not shown that not accepting the plea would have been rational under the circumstances, Martinez, 684 F. App'x at 922, and instead offers conclusory allegations in this regard. As to Elkins' assertions regarding relevant conduct in relation to having all information concerning the Guidelines or a specific sentence in the plea agreement itself, such an assertion is without merit. Judge Wood informed Elkins she would consider all relevant conduct in sentencing him, and Elkins stated he understood. Crim. Case, Doc. 29 at 8, 10, 11; see also Glover v. United States,

---

[4]      Elkins did receive benefit from pleading guilty based on his acceptance of responsibility, resulting in a three-level reduction. If Elkins had not pleaded guilty and had gone to trial and been convicted on the information, he would have had a total offense level of 32 (rather than 29) and still been in criminal history category VI, resulting in a Guidelines range of 210 to 262 months' imprisonment. In addition, Elkins' sentence could not have been higher than the statutory maximum of 20 years, or 240 months. Elkins' claim the plea agreement contained no benefit to him is contradicted by the record.

[5]      The Court addresses Elkins' allegations of ineffective assistance during sentencing proceedings, including his relevant conduct attribution through the PSR, in the next Section of this Report.

CV418-020, 2019 WL 1497062, at *4 (S.D. Ga. Mar. 4, 2019) (observing a court must consider all relevant conduct for sentencing purposes, even if that conduct underlies a charge dismissed as part of a plea agreement);

Accordingly, Elkins is not entitled to his requested relief, and the Court should **GRANT** this portion of the Motion to Dismiss and **DENY** this portion of Elkins' Motion.

### C.    During Sentencing

Elkins makes two arguments regarding ineffective assistance of counsel at sentencing. First, Elkins contends the specific offense for which he was responsible involved 1.5 ounces of cocaine, yet the probation officer attributed 17 ounces of cocaine to him in the PSR.  Doc. 1-1 at 31.  According to Elkins, Mr. Williams failed to object to the "vital error" regarding the offense quantity, which led to his offense to be changed, which in turn meant a change in his Guidelines' range.  Id. at 32.  Second, Elkins contends Mr. Williams failed to object to the application of the career offender provision of the Guidelines, U.S.S.G. § 4B1.1(a).  Id. at 33.  While Elkins does not object to having been over 18 years old when he committed the charged offense and having pled guilty to a controlled substance offense, he disputes whether he had two qualifying convictions to trigger the application of the career offender provision.  Id. at 33–34.  Elkins specifically challenges his 2011 Glynn County Superior Court conviction for possession of a controlled substance with intent to distribute as counting as a qualifying offense.  Id. at 34–35.

The Government states Mr. Williams objected at sentencing to the probation officer's use of 17 ounces of cocaine rather than the 1.5 ounces to which Elkins pleaded guilty.  Doc. 6 at 30. The Government asserts Elkins pleading guilty to distributing 1.5 ounces of cocaine did not prevent this Court from considering the "other amount of cocaine that he distributed to the same person during the same time frame."  Id. at 31.  In addition, the Government asserts the Court

was entitled to rely on the information regarding Elkins' prior convictions contained in the PSR to determine whether he qualified as a career offender, and Elkins did not object to the characterization of his prior convictions as being for possession of cocaine with intent to distribute.  Id.  The Government avers Elkins' citation to Moncrieffe v. Holder. 569 U.S. 184 (2013), is misplaced, as Moncrieffe has no bearing on the career offender provision of the Guidelines.  Id. at 32.

### 1.   *Objections related to drug quantity.*

According to the PSR, Elkins' base offense level was 30 because the offense involved at least 280 but less than 840 grams of cocaine base, and Elkins was accountable for at least 481.95 grams of cocaine base.  PSR, ¶ 21.  Elkins' base offense level was enhanced by two levels because he was over 18 years old at the time of the offense, the offense was a felony involving a controlled substance, and Elkins had at least two prior convictions for violent felonies, making him a career offender.  Id. at ¶ 27.  Elkins' offense level was reduced by three levels to 29 based on his acceptance of responsibility and timely notifying the Government he intended to plead guilty.  Id. at ¶¶ 28, 29.  Elkins had a criminal history total of 8 based on convictions for: theft by receiving stolen property, driving on a suspended or revoked license, no proof of insurance, and operating an unregistered vehicle; possession of less than one ounce of marijuana and a window tint violation; possession of 28 grams or more cocaine with intent to distribute; and possession of an unspecified quantity of cocaine with intent to distribute.  Id. at ¶¶ 39–40, 43–45.  Because Elkins committed the federal offense while serving another sentence, his criminal history point total was raised to 10, and his designation as a career offender put him in criminal history VI rather than V.  Id. at ¶¶ 46–48.  After analyzing the offense characteristics and relevant enhancements, as well as calculating Elkins' criminal history, the probation officer determined

Elkins had a total offense level of 29 and a criminal history category of VI.  Id. at ¶ 78.  Thus, Elkins' Guidelines range was 151 to 188 months' imprisonment.  Id.

Judge Wood asked during the sentencing hearing whether Elkins had read and reviewed the PSR and its addendum with Mr. Williams.  Crim. Case, Doc. 24 at 2.  Elkins stated he had, and Judge Wood asked if there were any objections to the factual accuracy or the probation officer's application of the Guidelines.  Id. at 3.  Elkins and Mr. Williams made objections to paragraphs 12 and 21 of the PSR, which concerned the offense computation level and drug quantity, respectively.  Id.  Judge Wood adopted the factual findings and conclusions about the sentencing Guidelines to which no objections were lodged, and she heard argument from Mr. Williams about his objections.  Id. at 3–4.  Mr. Williams stated he was not sure "from a drug quantity standpoint" that it mattered to argue about quantity if Elkins were considered a career offender, but he wanted to present Elkins' objection.  Id. at 4.  Mr. Williams also stated Elkins had denied participation and knowledge of a conspiracy and had accepted responsibility and reached an agreement to plead guilty to distribution of 1.5 ounces of cocaine, yet the probation officer took more than that quantity in consideration for relevant conduct purposes.  Id.  Mr. Williams noted Elkins was concerned the 481.95 grams of cocaine the probation officer attributed to him affected his Guidelines' range.  Id. at 5.  Judge Wood also heard from Elkins, who told Judge Wood that Mr. Williams told him he was only pleading guilty to distribution of 1.5 ounces of cocaine, but the probation officer attributed 481 grams of crack cocaine to Elkins. Id. at 5–6.  Elkins stated he asked Mr. Williams for clarity on whether he should be responsible for 481 grams of crack cocaine, and Mr. Williams said he was not.  Id. at 6.  However, the probation officer attributed 481 grams to Elkins.  Id.

Judge Wood also heard the Government's response to Elkins' objections, at which time Brunswick Police Department Investigator Jeffrey Franklin was called to provide testimony. Id. at 7. As part of his investigation of drug activity in Brunswick, Investigator Franklin monitored a wiretap focused on the Arron Clark operation (which formed the basis for the indictment in 2:15-cr-8). Id. at 8. Elkins was captured on the wiretap as a supplier of narcotics "on several occasions[]" for Arron Clark and Christopher Young. Id. Investigator Franklin stated law enforcement intercepted Elkins on 22 drug-related telephone calls. Id. at 9. Investigator Franklin and AUSA Bourne discussed code language for drug quantities used during these intercepted calls, as well as specific dates relating to orders made from Elkins, ultimately resulting in "roughly 17 ounces of cocaine hydrochloride attributed" to Elkins. Id. at 9–13. While AUSA Bourne stated it would be "reasonably foreseeable" "where there is a close-knit conspiracy" for the Probation Office and the Court to hold one defendant liable for the act of the others, this did not happen in this case. Id. at 14. Instead, AUSA Bourne stated Elkins was only being held accountable for his own relevant conduct, and the probation officer was "very conservative" in his estimate of quantity. Id. at 15. Judge Wood clarified with AUSA Bourne the differences between U.S.S.G. § 1B1.3(a)(1)(A), which concerns a defendant's own relevant conduct, and Subsection (B), which can reach beyond a defendant's actual conduct for consideration of amounts for which other people may be responsible. Id. Because Elkins pleaded guilty to an information versus the conspiracy charge in the indictment in 2:15-cr-8, Elkins' conduct was limited to his own conduct rather than that of other people, which could have extended to activities in which Elkins had no involvement. Id. AUSA Bourne noted "it was a real sticking point with Mr. Elkins that he was not involved with the conspiracy . . . ." Id. at 16. Nonetheless, AUSA Bourne stated the Government could look at the 1.5 ounces Elkins

pleaded guilty to and other relevant conduct and, even if the Court were to omit six or seven ounces from this calculation, Elkins would be in the same quantity range.  Id.  Judge Wood observed that, no matter the quantity considered, Elkins would be in the same Guidelines' range because "it is ultimately the career offender calculation that drives the bus."  Id.

Judge Wood informed Elkins his argument regarding the quantity calculation fell short for two reasons.  First, § 1B1.3(a)(1) was instructive on how to look at Elkins' relevant conduct, which meant the recorded telephone calls detailing Elkins' conduct and which the probation officer included in the PSR.  Id. at 18.  Judge Wood advised Elkins she was not going to reach beyond his actual, relevant conduct because to do so would have only been proper, under certain circumstances, if he pleaded guilty to conspiracy.  Id.  Second, Judge Wood stated, as discussed during Elkins' Rule 11 hearing, she would look at things such as his criminal history, which was a "fairly strong history of this type activity[,]" in determining what a fair sentence would be.  Id.  Accordingly, Judge Wood overruled Elkins' objections and found the probation officer calculated the Guidelines appropriately.  Id. at 19.

After consideration of what occurred at the sentencing hearing, the PSR and its addendum, the factors set forth in § 3553, and Elkins' actual conduct and criminal history, Judge Wood sentenced Elkins to 151 months' imprisonment, to be served consecutively to the term of imprisonment he was serving in Glynn County case CR11442-063.  Id. at 23.  Judge Wood sentenced Elkins to the lowest end of the advisory Guidelines' range she found and noted Elkins had no "apparent connection to any violent activity, gang activity," and "in consideration of his prior military service."  Id.

It is therefore abundantly clear that Mr. Williams presented Elkins' objections regarding the quantity to the Court, but Judge Wood did not find these objections to be compelling in light

of Elkins' relevant conduct and criminal history.[6]  Accordingly, Mr. Williams cannot be said to

have rendered ineffective assistance for failing to raise this objection that he did in fact raise, and

that ultimately had no bearing on his Guideline calculation.  See Glover, 2019 WL 1497062, at

*4 (noting a firearm enhancement had no effect on movant's sentencing because his criminal

history "launched him into career offender territory," and counsel could not have been deficient

in failing to raise the point at sentencing).  Thus, Elkins is not entitled to relief on this ground,

and the Court should **GRANT** this portion of the Government's Motion to Dismiss and **DENY**

this portion of Elkins' Motion.

### 2.    *Elkins' status as a career offender.*

Section 4B1.1 of the Sentencing Guidelines deems a defendant to be a career offender if

he was at least eighteen years old at the time he committed the offense for which he is being

sentenced, that offense "is a felony that is either a crime of violence or a controlled substance

offense," and he "has at least two prior felony convictions of either a crime of violence or a

controlled substance offense."  U.S.S.G. § 4B1.1(a).  "The term 'controlled substance offense'

means an offense under federal or state law, punishable by imprisonment for a term exceeding

one year, that prohibits the manufacture, import, export, distribution, or dispensing of a

controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a

counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."

U.S.S.G. § 4B1.2(b).  "[F]acts contained in a" PSR are deemed "to be undisputed and admitted if

a party does not assert a specific and clear objection to them before the sentencing court.  The

---

[6]     Elkins states his sentence calculation would have been based on the specific offense—distribution of 1.5 ounces of cocaine "[h]ad Williams filed substantive objections to the PSR, except the ones Elkins asked him to object[.]"  Doc. 1-1 at 33.  Elkins does not provide an example of another objection Mr. Williams could have or should have made, nor does he assert any other objection would have made a difference in his sentencing.

failure to make such a challenge 'to conclusory statements in the PS[R] renders those statements undisputed and permits the sentencing court to rely upon them without error even if there is an absence of supporting evidence.'" United States v. Kicklighter, 346 F. App'x 516, 519 (11th Cir. 2009) (citations omitted).

The career offender provision of the Guidelines was applied to Elkins based on his 2008 and 2011 convictions in the Glynn County Superior Court for possession of cocaine with intent to distribute. PSR, ¶¶ 27, 43, 44. Both of Elkins' convictions under Georgia law involved possession of cocaine with intent to distribute. Docs. 6-3, 6-4. The convictions are qualifying "controlled substance offenses" under § 4B1.1 because they were state law crimes, punishable by at least five years' imprisonment, for possession with intent to distribute cocaine, a controlled substance. McKenzie v. United States, CV 616-086, CR 615-001, 2017 WL 930146, at *5 n.6 (S.D. Ga. Jan. 11, 2017) (citing O.C.G.A. § 16-13-30).[7] Elkins clearly qualifies as a career offender under the Guidelines, and Mr. Williams was not ineffective for failing to object to this designation. In addition, because this designation was not objected to at sentencing, Judge Wood was entitled to rely on the statements contained in the PSR in determining Elkins' sentence.

---

[7] Section 16-13-30 of the Georgia Controlled Substances Act provides that a first offense involving possession with the intent to distribute carries a term of imprisonment of at least 5 years but not more than 30 years. A second conviction carries a term of at least 10 years' imprisonment but not more than 40 years or life. § 16-13-30(d). Elkins' 2008 conviction involved possession with intent to distribute 28 grams or more of cocaine, doc. 6-4 at 2–4, and his 2011 conviction involved possession with intent to distribute an unspecified quantity of cocaine, doc. 6-3 at 2–4. Elkins' contention that his 2011 conviction involved 3 grams or less of cocaine and that he was "threatened and forced" to plead guilty to this charge with an unspecified drug amount—in essence, that he does not have at least two qualifying offenses for career offender purposes—fails. Doc. 1-1 at 35. Even accepting Elkins' contentions as true, he cannot use his § 2255 Motion to attack any state court conviction, Daniels v. United States, 532 U.S. 374, 380 (2001). The Court was permitted to use his 2011 conviction under the career offender provision, especially in light of Elkins' failure to object to the probation officer's description of both convictions as possession with intent to distribute in the PSR. Turner v. Warden Coleman FCI (Med.), 709 F.3d 1328, 1336 (11th Cir. 2013), *abrogation on other grounds recognized by* United States v. Hill, 799 F.3d 1318, 1321 n.1 (11th Cir. 2015).

Elkins' reliance on <u>Moncrieff</u> is misplaced.  The facts underlying <u>Moncrieff</u> concerned whether the conviction of a non-citizen under Georgia law for possession of marijuana with intent to distribute qualified as an "aggravated felony" under the Immigration and Nationality Act ("INA").  569 U.S. at 184.  The Supreme Court stated the INA defines "aggravated felony" "to include a host of offenses . . . . [a]mong them is 'illicit trafficking in a controlled substance[,]" as defined as "any felony punishable under the Controlled Substances Act . . . .'" <u>Id.</u> at 188.  The Court held the definition of "aggravated felony" under the INA did not include "a state criminal statute that extends to the social sharing of a small amount of marijuana."  <u>Id.</u> at 187.  <u>Moncrieff</u> does not concern the career offender provision of the Sentencing Guidelines or the portions of O.C.G.A. § 16-13-30 concerning possession of cocaine with intent to distribute, and, therefore, is inapplicable.

For these reasons, the Court should **GRANT** this portion of the Government's Motion to Dismiss and **DENY** these portions of Elkins' § 2255 Motion.

### D.    Appeal

Elkins contends the Eleventh Circuit Court of Appeals sent him a letter informing him Mr. Williams filed an <u>Anders</u> brief.[8]  Doc. 1-1 at 37.  In response, Elkins submitted a pro se brief and pointed out several inaccuracies contained in Mr. Williams' brief.  <u>Id.</u>  According to Elkins, the question before the appellate court was whether his plea to the Information was knowing and voluntary, and because of Mr. Williams's "deficient performance and faulty plea advice," Elkins' plea could not have been made knowingly and voluntarily.  <u>Id.</u> at 39.

---

[8]      An <u>Anders</u> brief is filed on appeal when counsel opines there are no meritorious issues to raise on appeal.  <u>See</u> <u>Anders v. California</u>, 386 U.S. 738, 744 (1967) ("[I]f counsel finds [the defendant's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.").

The Government alleges Elkins fails to make any attempt to show Mr. Williams' purported errors prejudiced him on direct appeal.  Doc. 6 at 34.  In fact, the Government states, Elkins brought these alleged errors to the Eleventh Circuit's attention, and the Eleventh Circuit's independent review of the record revealed no arguable issues of merit.  Id. at 34–35.

To the extent Elkins argues his counsel's performance on appeal was deficient, such a claim is "governed by the same standards applied to trial counsel under Strickland."  Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).  "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal."  Shere v. Sec'y. Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008) (citing Smith v. Robbins, 528 U.S. 259, 285–86 (2000)).  "Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit."  Jones v. Sec'y, Dep't of Corr., 487 F. App'x 563, 568 (11th Cir. 2012) (citing United States v. Nyhuis , 211 F.3d 1340, 1344 (2000)).  "An attorney is not required under the Constitution or the Strickland standards to raise every non-frivolous issue on appeal."  Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983) ("Nothing in the Constitution or our interpretation of that document requires an appellate attorney to raise every 'colorable' claim suggested by a client.")).

Mr. Williams filed an Anders brief with the Eleventh Circuit.  The Eleventh Circuit panel agreed with Mr. Williams' "assessment of the relative merit of the appeal . . . ."  United States v. Elkins, 672 F. App'x 970, 971 (11th Cir. 2016).  The Eleventh Circuit's "independent examination of the entire record" revealed "no arguable issues of merits," and it affirmed Elkins' conviction and sentence.  Id.  Elkins' contention that his plea was not knowing and voluntary was reasonably considered to be without merit, and Mr. Williams' failure to raise that issue on

appeal cannot be considered ineffective.  Elkins fails to demonstrate that, had Mr. Williams raised this contention on appeal, the Eleventh Circuit would not have affirmed Elkins' conviction and sentence.  Thus, the Court should **DENY** this portion of Elkins' Motion.

In sum, Elkins has shown no reason to vacate, set aside, or correct his sentence or conviction.  The Court should **GRANT** the Government's Motion to Dismiss and **DENY** Elkins' Motion in its entirety.

## II.    Elkins' Motion to Amend

Elkins also seeks to amend his Motion to assert a claim that the Government breached the plea agreement.  Doc. 16.  Specifically, Elkins contends he pleaded guilty to distribution of 1.5 ounces of cocaine base, but his sentence of 151 months' imprisonment under the career offender provision of the Guidelines was a result of 17 ounces of cocaine base being attributed to him, "a clear violation and breach of the plea agreement."  Id. at 2.  Elkins asserts he rejected three previous plea agreements requiring him to stipulate to 17 ounces of cocaine base, and he wanted the Court to be aware he agreed to distribution of 1.5 ounces of cocaine.  Id. at 3.  Elkins maintains the Government breached the plea agreement, and the Court should either require the Government to allow him to be resentenced or allow him to withdraw his plea.  Id. at 4.  Elkins wishes to assert this claim in his current Motion.

The Government responds Elkins' new claim is untimely, as it was not filed within one year of his conviction becoming final.  Doc. 17 at 1.  The Government notes Elkins' untimely claim can be considered timely if it relates back to his original § 2255 Motion.  Id. at 2.  However, the Government contends Elkins' new claim does not relate back because it does not correct technical deficiencies or expand previously alleged facts.  Id. at 4.  In addition, the Government contends it had no notice of Elkins' new claim, as he asserted various claims of

ineffective assistance of counsel in his original § 2255 Motion.  Id.  The Government states

Elkins' new claim "derives from a separate transaction that is different in both time and type and

that blames new parties for the alleged error."  Id.  Alternatively, the Government states Elkins'

new claim is meritless, as Elkins knew from the plea agreement the Court would consider all

relevant conduct in making its sentence determination, and the Eleventh Circuit found no

arguable issues of merit and rejected Elkins' claim that his sentence was invalid based on 17

ounces of cocaine base being attributed to him even though he pleaded guilty to 1.5 ounces.  Id.

at 5–6.

Elkins' new claim that the Government (and, ostensibly, the Court) breached the plea

agreement does not relate back to his original § 2255 Motion.  In his original Motion, Elkins set

forth various assertions of ineffective assistance of counsel by his appointed attorney.  Doc. 1.

While it is true some of Elkins' original claims touched on plea negotiations, the proposed

amended claim involves additional and different facts, focuses on conduct by different case

participants, and implicates an entirely different legal framework.  Elkins' attempt to amend his

§ 2255 to set forth a breach-of-plea-agreement claim is, therefore, untimely, does not relate back,

and is impermissible.  Mayle v. Felix, 545 U.S. 644, 650 (2005) (holding that "an amended

habeas petition . . . does not relate back . . . when it asserts a new ground for relief supported by

facts that differ in both time and type from those the original pleading set forth").  Thus, the

Court **DENIES** Elkins' Motion to Amend.

Even if the Court were to find Elkins' proposed amendment timely and proper, he would

still not be entitled to his requested relief.  At base, Elkins' proposed breach-of-plea-agreement

claim asserts the Government and the Court breached the plea agreement by attributing 17

ounces of cocaine to Elkins as opposed to approximately 1.5 ounces.  But, as explained above,

Elkins was well aware the Court would consider his relevant conduct in crafting his sentence, and that relevant conduct included the larger quantity.  The Court discussed this with him during the Rule 11 hearing and heard Elkins' objections to the quantity during his sentencing hearing but rejected those objections.  In addition, the Eleventh Circuit did not find any argument relating to a perceived discrepancy in quantity Elkins raised, doc. 6-2, to have merit.  Elkins, 672 F. App'x at 970.  Moreover, even if Elkins could demonstrate some breach of the plea agreement—which he cannot—that breach would be harmless because his sentence was driven by his career offender status; attribution of a lower drug quantity at sentencing would have had no impact on Elkins' Guidelines calculation.  Thus, Elkins' proposed amended claim would fail on the merits, even if were not time barred.

## III.    Elkins' Motion for Documents

Elkins asks this Court to provide several documents to him, seemingly free of charge: (1) his change of plea and sentencing transcripts; (2) all discovery underlying his criminal prosecution; (3) a copy of the docket sheet; and (4) any other documents not listed.  Doc. 14 at 1. As support, Elkins cites this Court's February 1, 2019 Order lifting the stay in these proceedings. Id.; Doc. 14-1.

In response, the Government asserts Elkins has not shown good cause for his entitlement to discovery in these § 2255 proceedings, and his counsel already received a liberal amount of discovery materials.  Doc. 15 at 3.  The Government states it is under no obligation to provide Elkins with any documents, as his request is barred by his plea agreement.  Id.  Additionally, the Government contends this Court is not obligated to provide any documents to Elkins because his claims lack merit.  Id. at 4.

To the extent Elkins seeks free copies of his transcripts or to other discovery materials, the Court **DENIES** his Motion.  Glover v. United States, CV418-020, 2018 WL 3685505, at *1–2 (S.D. Ga. July 6, 2018) (denying requests for free transcripts and discovery materials in the § 2255 context) (citing 28 U.S.C. § 753(f), United States v. MacCollom, 426 U.S. 317, 326–28 (1976), and Arthur v. Allen, 459 F.3d 1310, 1310 (11th Cir. 2006)).  Plaintiff offers nothing other than he "requires the listed documents to assist in his pleadings."  Doc. 14 at 1.  If Elkins wishes to obtain copies of any documents filed upon the record and docket of this Court, he should request these copies from the Clerk of Court, who will in turn provide Elkins with a receipt for the cost of these copies which must be prepaid.

## IV.   Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Elkins leave to appeal *in forma pauperis*.  Though Elkins has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Napier v. Preslicka,

30

314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085,

403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order

in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the

Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability

when it enters a final order adverse to the applicant."  A certificate of appealability may issue

only if the applicant makes a substantial showing of a denial of a constitutional right.  The

decision to issue a certificate of appealability requires "an overview of the claims in the habeas

petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336

(2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of

reason could disagree with the district court's resolution of his constitutional claims or that

jurists could conclude the issues presented are adequate to deserve encouragement to proceed

further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it

to dispose of the case, a reasonable jurist could not conclude either that the district court erred in

dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v.

McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th

Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal

bases adduced in support of the claims."  Miller-El, 537 U.S. at 336.

Based on the above analysis of Elkins' Motion and the Government's Response and

applying the Certificate of Appealability standards set forth above, there are no discernable

issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of

a Certificate of Appealability.  If the Court adopts this recommendation and denies Elkins a

Certificate of Appealability, Elkins is advised that he "may not appeal the denial but may seek a

certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DENY** Elkins' § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Elkins a Certificate of Appealability and *in forma pauperis* status on appeal. I **DENY** Elkins' Motion to Amend and his Motion for Documents.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

SO ORDERED and **REPORTED and RECOMMENDED**, this 28th day of October, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA